IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TEOFILO ASCENCIO GARCIA,

    Petitioner,   No. CIV S-12-1060 KJM GGH P

  vs.

RANDY GROUNDS,

    Respondent.   FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Petitioner is a state prisoner proceeding in pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is respondent's June 28, 2012, motion to dismiss on the grounds that this action is barred by the statute of limitations.  Petitioner has filed an opposition based on equitable tolling, to which respondent has filed a reply.  After ordering and reviewing further briefing, the court now issues the following findings and recommendations.

Discussion

        The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

1

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner was convicted of making terrorist threats, unlawful discharge of a firearm, and forced oral copulation. (Rsp. Lod. Doc. 1.) On November 18, 2004, petitioner was sentenced to an indeterminate prison term of fifteen years to life. Id. Petitioner filed a direct appeal which was denied by the Third District Court of Appeal on January 26, 2007 (Rsp. Lod. Doc. 2), the first habeas petition was filed in Sacramento County Superior Court on July 22, 2011 (Rsp. Lod. Doc. 3) and denied on September 8, 2011 (Rsp. Lod. Doc. 4), based on untimeliness, citing, inter alia In re Robbins, 18 Cal.4th 770, 811-812, 812 fn. 32 (1998); In re Clark, 5 Cal. 4th 750, 774-775 (1993). The second petition was filed in the Third District Court of Appeal on October 1, 2011 (Rsp. Lod. Doc. 5) and denied in a postcard denial on October 20, 2011 (Rsp. Lod. Doc. 6). Id. The third and final state court habeas petition was filed in the California Supreme Court on November 14, 2011 (Rsp. Lod. Doc. 7) and received a postcard denial on March 21, 2012 ( Rsp. Lod. Doc. 8). Id. There is no dispute that petitioner's conviction became final for AEDPA purposes on March 7, 2007. Petitioner had one year, that is, until March 7,

\\\\\

\\\\\

2008, to file a timely federal petition, absent applicable tolling. The instant action, filed April 16, 2012,[1] is not timely unless petitioner is entitled to statutory or equitable tolling.

Statutory Tolling

Petitioner filed his first state habeas petition on July 22, 2011, over three years after the expiration of the statute of limitations on March 7, 2008. After denial of his first state petition in the Superior Court, pursuant to In re Robbins and In re Clark, petitioner filed two additional habeas petitions, the last of which was denied by the state Supreme Court in a summary order filed March 21, 2012.

Petitioner is not entitled to statutory tolling for the time when his state court petitions were pending, because a state court habeas petition filed beyond the expiration of AEDPA's statute of limitations does not toll or revive the limitations period under section 2244(d)(2). See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001). Additionally, the petitions were not properly filed, as the Superior Court, in the only reasoned decision made by the state courts, denied petitioner's first state court petition as untimely. See Pace v. DiGuglielmo, 544 U.S. 408, 417, 125 S. Ct. 1807, 1814 (2005).

Equitable Tolling

A habeas petitioner is entitled to equitable tolling of AEDPA's one-year statute of limitations only if he shows: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstances stood in his way and prevented timely filing. See Holland v. Florida, – U.S. –, 130 S.Ct. 2549, 2562 (2010); Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009). The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence." See Holland v. Florida, 130 S.Ct. at 2565. See also Bills v.

---

[1] The court affords petitioner application of the mailbox rule as to all his habeas filings in state court and in this federal court. Houston v. Lack, 487 U.S. 266, 275-76, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (pro se prisoner filing is dated from the date prisoner delivers it to prison authorities); Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir. 2003) (mailbox rule applies to pro se prisoner who delivers habeas petition to prison officials for the court within limitations period).

1   Clark, 628 F.3d 1092, 1096 (9th Cir. 2010).

2            As to the extraordinary circumstances required, the Ninth Circuit has held that the
3   circumstances alleged must make it impossible to file a petition on time, and that the
4   extraordinary circumstances must be the cause of the petitioner's untimeliness.  See Bills v.
5   Clark, 628 F.3d at 1097, citing Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003).  This is a
6   very high threshold, "lest the exceptions swallow the rule."  See Miranda v. Castro, 292 F.3d
7   1063, 1066 (9th Cir. 2002).  In addition, '[w]hen external forces, rather than a petitioner's lack of
8   diligence, account for the failure to file a timely claim, equitable tolling may be appropriate.'"
9   Lott v. Mueller, 304 F.3d 918, 922 (9th Cir. 2002), quoting Miles v.Prunty, 187 F.3d 1104, 1107
10  (9th Cir. 1999).

11           In his opposition to the motion to dismiss, petitioner had contended that he was
12  abandoned by his retained counsel, who was retained and paid to file further appeals, but only
13  filed an initial appeal.

14           In directing the filing of supplemental briefing with respect to the
15  question of equitable tolling, the court stated:

> Review of the papers indicates that petitioner has failed to provide
> support for his allegations that his attorney abandoned him during
> the appeals process, causing delay in the filing of his habeas
> petition.  Although petitioner refers to his own declaration as
> Exhibit A, the only attachment to the opposition is a verification by
> petitioner, stating only that the facts set forth therein are true.[2]
> Petitioner also refers to an Exhibit C, indicating his counsel's
> previous history of negligence and abandonment of his clients, but
> that Exhibit is not attached.
> More importantly, petitioner has not submitted any
> documentation concerning the agreement between petitioner and
> his counsel that would indicate which appeals this attorney was
> retained to file on petitioner's behalf, or exactly what legal work
> would be done in exchange for petitioner's $10,000 payment.
> Petitioner should also submit documentation, if available,
> supporting his late discovery that his attorney did not file certain

---

[2]  Petitioner has attached a declaration to the petition, stating that he paid his attorney $10,000 to appeal his sentence and file a "subsequent appeal," but that this attorney "was doing nothing." (Dkt. no. 1 at 78-19.)

4

1   appeals, such as when he discovered this information, e.g., a letter
    sent by petitioner to his attorney at the time he discovered no
2   appeal had been filed asking why no appeal was filed. If petitioner
    has documentation supporting his efforts since March 7, 2007,
3   when direct review became final, to determine the status of his
    appeals or whether his attorney was working on them, he should
4   also submit those documents.

5   (Order to Show Cause, Doc. no. 17, pp. 1-2.)

6           In his response to the order to show cause, petitioner states that a retainer

7   agreement was never executed, but that all agreements were oral. In addition to paying counsel

8   for the initial appeal, petitioner claims counsel "was also retained and paid to file further

9   appeals." In support, petitioner has submitted various exhibits. His declaration, which he

10  previously submitted with his petition, states in part:

11          After my conviction I caused to be paid to attorney Michael
            Borkowski the sum of $10,000 to appeal my sentence. While the
12          attorney filed an initial appeal, he then failed to complete his
            obligations to me and abandoned me after taking an additional
13          $10,000 to file a subsequent appeal. I am informed now that prior
            to my dealings with attorney Borkowski he was disciplined by the
14          California State Bar for various problems including substance
            abuse and is now suspended from the practice of law. Any delay in
15          the filing of this petition was a result of my dependence on attorney
            Borkowski and my belief that he was working for me when in fact
16          he was doing nothing.

17  (Doc. no. 20 at 13-14.) Also submitted is the declaration of petitioner's niece, Andrea Pulido,

18  who states that petitioner understands very little English, speaks almost no English, and cannot

19  read or write any English. For this reason, and presumably because petitioner told his niece that

20  he had not heard from Mr. Borkowski for several months, he asked his niece to communicate

21  with Mr. Borkowski in 2006 and 2007. During this period, Ms. Pulido placed several phone

22  calls to Mr. Borkowski, leaving messages containing questions about the case. With each phone

23  call, Ms. Pulido talked to office personnel who repeatedly informed her that counsel was "out of

24  town" or not available. Although she left a message each time, Mr. Borkowski never returned

25  her calls. (Id. at 15-16.)

26  \\\\\

Petitioner has also attached a credit union transaction receipt, dated November 24, 2004, indicating a check was issued to Michael Borkowski for $10,000; however, it appears to have been returned, making it unclear whether Borkowski cashed it. (Id. at 17.) Furthermore, it accounts for $10,000 only, which fails to support petitioner's claim that this attorney took an initial sum of $10,000 and then took "an additional $10,000 to file a subsequent appeal." (Id. at 13-14.)

Petitioner has also submitted a letter, dated July 9, 2008, addressed to Mr. Borkowski, which states: "We, the family of Teofilo Garcia, would like to request that you contact him to discuss *reopening* his case in light of new circumstances." This letter is signed by Martha Garcia. (Id. at 18.) (emphasis added).

Additional exhibits refer to petitioner's complaint regarding Borkowski to the State Bar on January 12, 2010, and other State Bar proceedings against Mr. Borkowski for his actions between 1992 and October 18, 2006, which includes a State Bar decision, dated September, 2010, recommending that he be suspended from the practice of law for three years.[3] (Id. at 19-37.)

As pointed out by respondent, petitioner has failed to come forth with specific information as requested by the court. His declaration is the same one previously filed with his petition. Petitioner has not provided any written documentation of the retainer agreement, explaining that there was no written agreement. He has failed to show that this attorney was hired to do work beyond the initial appeal. See Sanford v. McDonald, 2012 WL 1535171, *6 (C.D. Cal. Mar. 6, 2012) (finding equitable tolling not warranted in part because petitioner had not submitted written documentation showing that his attorney was responsible for filing the untimely petition, despite evidence that attorney had agreed to gratuitously prepare a petition for petitioner to file in pro se).

---

[3] This decision also recommended that execution of the suspension be stayed and that Mr. Borkowski be placed on probation for three years. (Id. at 34-35.)

Although the State Bar records do appear to show that Mr. Borkowski was having problems representing his clients during part of the same time period that he was representing petitioner, this evidence is not sufficient to show that petitioner's attorney had agreed to file any appeals beyond the initial appeal.

Petitioner claims that Maples v. Thomas, ___ U.S. ___, 132 S.Ct. 912 (2012), provides for equitable tolling where counsel has abandoned the client. In that case, the Supreme Court recently stated: "We agree that, under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." Id. at 924. Under Maples, the attorney's abandonment as it pertains to extraordinary circumstances segues to the question of whether petitioner was reasonable in lacking reason to believe his attorney was not representing him, which in turn must be answered by examining petitioner's due diligence.

Due diligence in attorney misconduct cases require consideration of "*inter alia*, whether the petitioner expeditiously secured counsel to file the habeas petition, the frequency and nature of the attorney-client communications, when, in light of the petitioner's education and background, he reasonably should have sought new counsel, and whether the petitioner had the means to consult alternate counsel." Doe v. Busby, 661 F.3d 1001, 1013 (9th Cir. 2011) (internal citations omitted).

In this case, the evidence presented indicates that petitioner wrote a check to counsel around November 24, 2004, around seven months after he was convicted, and before his direct appeal was decided. The record indicates that petitioner's niece contacted Mr. Borkowski numerous times; however, these requests for contact ended some time in 2007, and petitioner has failed to present evidence that he inquired into the status of his case after that time. The July, 2008 letter by another family member requesting "reopening" of the case, indicates that petitioner's family was aware that the case was closed, and hence that counsel was not presently

7

working on it.  Yet, petitioner did nothing between that time and July 23, 2011 when he filed his first habeas petition.  Petitioner has presented no other evidence of his attempts to contact counsel to discover the status of his appeals or whether his attorney was working on them, and when petitioner discovered that his attorney did not file petitions on his behalf.  Despite counsel's lack of response or communication during the entire time period, petitioner failed to inquire into other means to file his petition.   Rather than "waiting patiently for news that never came," (Opp. at 4), petitioner should have diligently moved to file his petition through some other means once he was aware that his attorney was not returning phone calls and the deadline was approaching, not fours years later.

Petitioner's education and background indicate that he speaks almost no English and is illiterate in this language.  This language barrier is not enough by itself to justify equitable tolling, and petitioner's access to translators in the form of at least two family members is sufficient to overcome this deficiency.  See Mendoza v. Carey, 449 F.3d 1065, 1069-1070 (9th Cir. 2006) (lack of access to Spanish language translator or legal materials might be grounds for equitable tolling).  Petitioner also had the means to consult alternate counsel since he had the means to retain private counsel in the first instance, as well as family members to communicate and make such inquiries on his behalf.  Petitioner does not argue that having paid $10,000 to Mr. Borkowski, he was then without funds to afford other counsel.

Finally, "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006).

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss, filed on June 28, 2012 (doc. 11), be granted and this action be dismissed.

If petitioner files objections, he shall also address if a certificate of appealability should issue and, if so, as to which issues.  A certificate of appealability may issue under 28

U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate of appealability must "indicate which specific issue or issues satisfy" the requirement. 28 U.S.C. § 2253(c)(3).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Courts order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 1, 2013

/s/ Gregory G. Hollows
U.S. Magistrate Judge

GGH:076/Garc1060.sl.wpd